# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### HUNTINGTON

**WILLIAM BALLENGER,**

      **Plaintiff,**

**v.**                                         **Case No. 3:15-cv-12558**

**LARRY CRAWFORD, Administrator,**
**Western Regional Jail,**
**JOHN DOE, Shift Supervisor on December 3, 2014,**
**from 8:00 a.m. to 8:00 p.m.,**
**JOHN DOE, Core Rover on December 3, 2014,**
**from 8:00 a.m. to 8:00 p.m.,**
**JOHN DOE, C-Pod Rover on December 3, 2014,**
**from 8:00 a.m. to 8:00 p.m.,**
**PRIMECARE MEDICAL, INC.,**
**JANE DOE and JOHN DOE, Staff of PrimeCare**
**Medical, Inc., on duty on December 3, 2014,**

      **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Robert C. Chambers, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). On August 28, 2015, the plaintiff filed a Complaint under 42 U.S.C. § 1983 against Larry Crawford, the Administrator of the Western Regional Jail, PrimeCare Medical, Inc., and various unidentified correctional officers and medical staff who were working at the Western Regional Jail on December 3, 2014.

Pending before the court are the following motions: a Motion to Dismiss filed by defendant Larry Crawford (ECF No. 9) and a Motion to Dismiss or, in the alternative, Motion for Summary Judgment filed by PrimeCare Medical, Inc. (ECF No. 12).

## THE PLAINTIFF'S ALLEGATIONS AND PROCEDURAL HISTORY

The plaintiff's Complaint (ECF No. 2), which is difficult to decipher in parts, arises out of an alleged attack on the plaintiff by four inmates at the Western Regional Jail ("WRJ") on December 3, 2014, and allegedly insufficient medical treatment thereafter. The Complaint names as defendants Larry Crawford, the Administrator of the WRJ and three unidentified "John Doe" correctional officers who were working on the 8:00 a.m. to 8:00 p.m. shift on December 3, 2014, as well as PrimeCare Medical, Inc. ("PrimeCare"), the contracted medical provider at the WRJ, and all PrimeCare staff members who were on duty on December 3, 2014 (who also remain unidentified).

Specifically, the Complaint alleges that, on December 3, 2014, he was assaulted by inmates Damon Bailes, Timothy Lockett, Bobby Brooks and Thomas Chapman, and that one of the inmates was armed with the bottom of a push broom.  (ECF No. 2 at 8).  The Complaint alleges that the inmates beat the plaintiff in the face with the broom piece, and stomped, punched and kicked him, which resulted in injuries to his mouth and teeth that required stitches and loss of two teeth.  The plaintiff also alleges that he suffers from headaches and dizziness as a result of this incident.  (*Id.*)

The plaintiff alleges that "the Western Regional Jail did nothing to stop this from happening and the tower rover relayed to another WRJ staff member (Officer Blevins) that he watched them take turns stomping me in the face."  (*Id.*)  The plaintiff further alleges that the "excuse I got for not stopping them from assaulting me was that 'this happens all the time and the jail is understaffed now.'"  (*Id.*)  The Complaint does not identify who made these comments.

The plaintiff further contends that he put in numerous grievances and requests to medical to get his teeth fixed and was told by a PrimeCare staff member (who is not

identified), "this is jail, it happens all the time" and "PrimeCare was not responsible for fixing my teeth." (*Id.* at 8-9). The plaintiff further contends that he was never given a CAT scan or an MRI to make sure that he did not have "bleeding on the brain or swelling since I was being repeatedly beat in the face." (*Id.* at 9). The plaintiff further alleges that he was told to lay down in a medical cell that had not been sanitized from prior patients. (*Id.*) The Complaint further states:

> By the WRJ staff members watching me get assaulted and not stopping them and by PrimeCare Medical, Inc. not giving me the necessary aid that I needed amounts to deliberate indifference. I am asking the courts to grant me the sum of $250,000 for the replacement and proper fixing of my teeth. I am also asking for this sum for medical malpractice (medical neglect). Inmate neglect ending with physical injury, pain and suffering, post traumatic stress, mental anguish, failure to provide safe secure housing for inmates and staff and also failure to provide a clean living environment for medical patients. I truly believe that if these things were properly in place then this situation would have never occurred. I am also asking $250,000 in punitive damages.

(*Id.*)

On September 29, 2015, defendant Larry Crawford, by counsel, filed a Motion to Dismiss (ECF No. 9), and a Memorandum of Law in support thereof (ECF No. 10). On October 5, 2015, PrimeCare, by counsel, filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment (ECF No. 12), and a Memorandum of Law in support thereof (ECF No. 13). On October 23, 2015, the plaintiff filed a Response to defendant Crawford's Motion to Dismiss (ECF No. 15) and a separate Response to the Motion to Dismiss filed by PrimeCare (ECF No. 16). On November 6, 2015, defendant Crawford filed a Reply (ECF No. 17). These motions are ripe for adjudication.

## STANDARD OF REVIEW

### *Dismissal for failure to state a claim upon which relief can be granted*

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints.   However, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case.  The Court wrote:

> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted).  Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.*, at 556. * * *
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

The defendants' motions will be reviewed under Rule 12(b)(6) of the Federal Rules of Civil Procedure and the *Twombly/Iqbal* standard.  To the extent that defendant Crawford asserts that the court lacks subject matter jurisdiction over the claims against him in his official capacity, the motion will also be addressed under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

*Summary Judgment*

In evaluating summary judgment motions, Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a) (2010).  Material facts are those necessary to establish the elements of a party's cause of action.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  *Id.*  The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  *Overstreet v. Kentucky Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir. 1991).

Rule 56(c)(1) of the Federal Rules of Civil Procedure provides that:

> A party asserting that a fact cannot be or is genuinely disputed, must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Subsection (e) of Rule 56 provides that, if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may: (1) give the parties an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and undisputed supporting materials show that the movant is entitled to it; or (4) issue any other appropriate order.  Fed. R. Civ. P. 56(e).

A court must neither resolve disputed facts nor weigh the evidence, *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility.  *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  However, the party opposing the motion may not rely upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial.  *Sprenkle v. Hartford Life Ins. Co.*, 84 F. Supp. 2d 751 (N.D. W. Va. 2000).

If a party's motion relies upon materials outside of the four corners of the Complaint to support its claim or defenses, as does the PrimeCare's, the court may treat

a motion to dismiss as one for summary judgment pursuant to Rule 56.  *See Jeffers v.*

*Wal-Mart Stores, Inc.*, 84 F. Supp.2d 775, 777 (S.D. W. Va. 2000).

## ANALYSIS

### A.      Defendant Crawford's Motion to Dismiss.

Defendant Crawford's Motion to Dismiss asserts that this federal court lacks

subject matter jurisdiction over the plaintiff's claims against him based upon his

immunity from suit in his official capacity under the Eleventh Amendment to the United

States Constitution.  Crawford's motion documents further assert that the Complaint fails

to state a plausible claim against him and that he is entitled to qualified immunity.  The

undersigned will address each assertion in turn.

### *Eleventh Amendment immunity*

Crawford asserts that, in his official capacity as the Administrator of the WRJ, he

is immune from suit under the Eleventh Amendment to the United States Constitution

and, thus, this federal court lacks subject matter jurisdiction over the plaintiff's claims

against him.  As noted in *Haley v. Virginia Dep't of Health*, 4:12-cv-0016, 2012 WL

5494306, at *2 n.2 (W.D. Va.  Nov. 13, 2012), "[t]he Fourth Circuit has not resolved

whether a motion to dismiss based on the Eleventh Amendment is properly considered

pursuant to Rule 12(b)(1) or Rule 12(b)(6) . . . The recent trend, however, appears to treat

Eleventh Amendment immunity motions under Rule 12(b)(1)."

The plaintiff's Complaint does not specify in what capacity he is suing Crawford.

The determination of whether a defendant has been named in his official or personal

capacity is generally made by examining the face of the Complaint.  *Amos v. Maryland

Dep't of Pub. Safety & Corr. Servs.*, 126 F.3d 589, 609 (4th Cir. 1997), *vacated on other

grounds*, 524 U.S. 935 (1998).  Nevertheless, "a plaintiff need not plead expressly the

capacity in which he is suing a defendant in order to state a cause of action under § 1983 . . . when a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Biggs v. Meadows*, 66 F.3d 56, 60-61 (4th Cir. 1995). Ultimately, "the underlying inquiry remains whether the Plaintiff's intention to hold a defendant personally liable can be ascertained fairly." *Id.* at 61.

Crawford's motion documents assert that, on the face of the Complaint, the plaintiff's allegations against him are only based upon his performance of his duties as Administrator and are not based upon any individual action, decision or omission by him. Therefore, Crawford asserts that he is only being sued in his official capacity and is, thus, entitled to Eleventh Amendment immunity on the plaintiff's claims for damages. (ECF No. 10 at 6).

The plaintiff's Response to Crawford's Motion to Dismiss does not address the Eleventh Amendment defense, and his references to Crawford throughout the Complaint and Response clearly address only Crawford's official role as Administrator of the WRJ. The plaintiff seeks monetary damages for the alleged failure of "the WRJ" to protect him and to ensure that he was provided with adequate medical treatment while he was in custody there. The undersigned proposes that the presiding District Judge **FIND** that these factors weigh in favor of a finding that the plaintiff's claims against defendant Crawford are brought against him only in his official capacity.

In *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Furthermore, pursuant to the Eleventh Amendment to the

United States Constitution, the power of the federal judiciary does not extend to suits by a citizen of one state against another, or to suits by a citizen against his or her own state. *Hans v. Louisiana*, 134 U.S. 1, 9 (1980).  Thus, the Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties seeking to impose monetary liability upon a State or State officials, which may be paid from public funds in the state treasury.  *Quern v. Jordan*, 440 U.S. 332, 337 (1979).  Absent consent, waiver, or abrogation of such immunity by Congress, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment.  *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984).  However, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex Parte Young*, 209 U.S. 123 (1908)).

The plaintiff's case does not meet any of the narrow exceptions to a state's immunity under the Eleventh Amendment:  the State of West Virginia has not waived its immunity or consented to this suit; Congress did not abrogate state immunity when 42 U.S.C. § 1983 was enacted; and the plaintiff does not appear to seek prospective injunctive relief from the defendants.  Rather, he seeks only monetary damages.

Accordingly, to the extent that the plaintiff has attempted to sue defendant Crawford in his official capacity for monetary damages in this federal court, the undersigned proposes that the presiding District Judge **FIND** that this court lacks subject matter jurisdiction over such claims and the same must be dismissed under the Eleventh Amendment and the *Will* doctrine.

9

### _Deliberate indifference to inmate safety/failure to protect claim_

The plaintiff's Complaint alleges that the defendants were deliberately indifferent to his safety and to his medical needs.  A deliberate indifference claim is generally addressed as a claim of cruel and unusual punishment under the Eighth Amendment to the United States Constitution and is applicable to prisoners who have already been convicted and sentenced.  However, the plaintiff's Complaint does not state whether he was a pre-trial detainee or a convicted prisoner at the time of this incident.  A review of the West Virginia Regional Jail & Correctional Facility Authority's ("WVRJCFA") inmate locator suggests that the plaintiff is still a pre-trial detainee being housed in the WRJ pending the conclusion of his criminal proceedings in the Circuit Court of Cabell County, West Virginia.  Accordingly, it would appear that he was a pre-trial detainee at the time of the incidents alleged in his Complaint.

As a pre-trial detainee, "the protections afforded by the Due Process Clause of the Fourteenth Amendment, and not those afforded by the Eighth Amendment, apply." _Slade v. Hampton Roads Reg'l Jail_, 407 F.3d 243, 250 (4th Cir. 2005).  However, the standards for deliberate indifference under both amendments are coextensive.  _See Brown v. Harris_, 240 F.3d 383, 387 (4th Cir. 2001).

Because "[p]retrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth Amendment," _Young v. City of Mount Ranier_, 238 F.3d 567, 575 (4th Cir. 2001), courts generally apply the standards developed in Eighth Amendment jurisprudence to due process claims brought by pretrial detainees.  _See, e.g., Brown v. Harris,_ 240 F.3d 383, 388 (4th Cir. 2001) (finding that a determination of whether a plaintiff was a pretrial detainee or a convicted prisoner was unnecessary because the standard is the same); _Parrish ex rel. Lee_

*v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (cases applying Eighth Amendment standards are relevant to a Fourteenth Amendment claim); *Lacy v. DeLong*, No. 2:13-cv-14813, 2016 WL 3566242 (S.D. W. Va. June 27, 2016) (Johnston, J.)  Thus, in cases such as this, where the defendants are accused of failing to protect a detainee from a substantial risk of harm or failing to attend to a detainee's serious medical needs, "conduct that amounts to deliberate indifference . . . is viewed as sufficiently shocking to the conscience that it can support a Fourteenth Amendment claim." *Parrish*, 372 F.3d at 302.

In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"  The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'"  *Id.* at 833.  Clearly, however, "[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'"  *Id.* at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see also Odom v. S.C. Dep't of Corrs.*, 249 F.3d 765, 770 (4th Cir. 2003) ("[G]ratuitously allowing the beating . . . of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency.").

To sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official had a "'sufficiently culpable state of mind;'" that is, "'deliberate indifference' to inmate health or safety." *Id.*

at 834. (Citations omitted.)  The Supreme Court rejected an argument that an objective test of deliberate indifference be established.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

Thus, prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to inmate health or safety.  *Farmer*, 511 U.S. at 847.  The negligent failure to protect inmates from violence will not suffice. *Pressly*, 816 F.2d at 979.  Accordingly, the plaintiff must establish that "the defendant was aware of the facts that indicated a substantial risk of serious harm to inmate safety.  It is not enough that the officer [] should have recognized it; [he] actually must have perceived the risk."  *Parrish*, 372 F.3d at 303.

To the extent that the court determines that defendant Crawford is also being sued in his individual capacity, he claims that the Complaint fails to state a claim upon which relief can be granted because it fails to sufficiently allege liability based upon Crawford's own actions.  Concerning the assault, the plaintiff has not alleged that Crawford was present or in any way directly involved in this incident.  In fact, the Complaint itself does not contain any allegations at all concerning the specific conduct of defendant Crawford. Rather, the Complaint generally asserts that "the Western Regional Jail did nothing to stop this from happening."  Thus, it appears that the plaintiff is simply trying to hold Crawford liable under a theory of *respondeat superior*, which is not permissible under section 1983.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

In his Response to Crawford's Motion to Dismiss, however, the plaintiff asserts additional allegations in an attempt to bolster his deliberate indifference/failure to protect claim.  Specifically, the plaintiff states:

> Damon Bailes and Timothy Lockett are known violent offenders. Particularly Damon Bailes has a long history of violence from domestic violence (battery) to malicious wounding.  Those two out of the four that attacked me should have never been together[;] for one[,] there [sic; they're] co-defendants[;] for two[,] there [sic; they're] known for violence.  Since April 17, 2014, there has [sic; have] been numerous attacks that lead to survere [sic; severe] physical injuries to inmates.  I witness[ed] one while I was on C-1[,] seen [sic; saw] the end result of one when I was on C-6 and was also the victim of one while I was on C-1.  Administrator Crawford is a prison official at the Western Regional Jail and is to the fact the highest official they have.  He is responsible for making sure that things in the Jail are being run sufficiently and accordingly to the constitution and civil rights of the prisoner . . . . Mr. Crawford received many reports of what's going on here and with that being known my case becomes similar if not the same as *Hardy v. Dist. of Columbia*, 601 F. Supp.2d 182, 189-90 (D.D.C. 2009) (showing that assailants had committed similar acts previously and facility continued to inadequately staff areas where attacks took place held sufficient to state an Eighth Amendment claim).  Bottom line is Administrator Crawford along with his lower staff members neglected to protect the inmates that are housed in Western Regional Jail.

(ECF No. 15 at 3-4).  Thus, the plaintiff's claims against Crawford actually appear to be more akin to supervisory liability claims premised upon his failure to correct the alleged unconstitutional conduct of his subordinates.

In *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994), the Court held that supervisors may be liable for the actions of their subordinates where the supervisor, by his own conduct, was deliberately indifferent to, or tacitly authorized or approved prior constitutional violations.  Such liability is not based on *respondeat superior*, but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." 13 F.3d at 798 (*quoting Slakan v. Porter*, 737 F.2d 368 (4th Cir.

13

1984)).   In *Shaw*, the Fourth Circuit discussed the following elements necessary to establish a supervisor's liability under 42 U.S.C. § 1983:

> 1)   The supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
>
> 2)   The supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and
>
> 3)   There was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injuries suffered by the plaintiff.

13 F.3d at 799.  As noted in *Evans v. Chalmers*, 703 F.3d 636, 660-61 (4th Cir. 2013):

> [T]he Supreme Court explained in *Iqbal* that "a supervisor's mere knowledge" that his subordinates are engaged in unconstitutional conduct is insufficient to give rise to liability; instead, a supervisor can only be held liable for "his or her own misconduct."  [556 U.S. at 677.]

Generally, "a supervisory power cannot be liable, under Section 1983, for the actions of its subordinates unless it is on fair *notice* that subordinates are engaged in constitutional or statutory deprivations" and "consciously chose[] a particular course of action in response."  *Brown v. Mitchell*, 308 F. Supp.2d 682, 703 (E.D. Va. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).

Defendant Crawford's Reply asserts that the plaintiff's assertion of additional allegations in his Response is an improper attempt to amend his Complaint.  (ECF No. 17 at 2).  His Reply states:

> Only the factual allegations and causes of action raised in the Complaint are to be considered, because 12(b)(6) motions are limited to testing the sufficiency of the pleadings within the four corners of the Complaint.  *See CACI Intern., Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009).  The Fourth Circuit has a "well-established Four Corners Rule" which limits what a court may consider on a 12(b)(6) motion to dismiss to the complaint itself and any documents that are attached to it.  *Id.*  The rule

> prevents the inevitable alternative where a Plaintiff's allegations become an
> ever-shifting target.

(*Id.* at 2-3).   However, Crawford further contends that, even if the court considers the additional allegations as part of the pleadings, such allegations are conclusory and still fail to state a sufficient cause of action against defendant Crawford in his individual capacity.  (*Id.*)  His Reply further asserts:

> While Plaintiff alleges in general, conclusory fashion that Administrator
> Crawford and other staff members neglected to provide necessary staff at
> the facility, there is no discussion of how Plaintiff believes a lack of staffing
> allegedly contributed to the events alleged in his Complaint or any of the
> other alleged incidents of violence he mentions for the first time in his
> Response.  Plaintiff does not identify the perpetrators of other alleged
> incidents of violence, or describe any of the surrounding circumstances,
> including the date, time, or location.  The existence of other alleged
> incidents of violence does not support an allegation that Larry Crawford was
> deliberately indifferent to a known risk of harm to Plaintiff.

(*Id.* at 3-4).  Crawford's Reply further attempts to distinguish the *Hardy* case cited by the plaintiff on the basis that it identified a specific unaddressed security problem that the plaintiffs alleged led to prior attacks, as well as their own.  "In contrast, Plaintiff's Response in this matter does not identify any specific security problem that he believes contributed to the assault on him, nor does he allege any prior knowledge of that security problem by the defendants.  He does not allege any similarities between prior alleged incidents of violence at the jail and his own incident."  (*Id.* at 5).  Thus, Crawford asserts that the plaintiff's general and conclusory assertion that the failure to "provide necessary staff" is insufficient to establish a plausible constitutional violation.

In the instant action, the Plaintiff has failed to allege or articulate any facts to support a finding that, prior to this alleged assault, defendant Crawford was aware of facts from which an inference could be drawn that the plaintiff was at substantial risk of serious harm at the hands of the four inmates who beat him and that he was deliberately

indifferent thereto.  The plaintiff's attempt in his Response to add allegations concerning the alleged known violent nature of at least two of these inmates and his general and conclusory assertions that Crawford had learned of other incidents of excessive violence and did not hire proper staff is not sufficient to elevate his federal constitutional claim above the speculative level.

The undersigned proposes that the presiding District Judge **FIND** that the plaintiff's allegations against defendant Crawford do not state a facially plausible federal constitutional claim for the failure to protect the plaintiff from harm and, thus, the Complaint fails to state a claim upon which relief can be granted against him.

<u>Negligence claims</u>

Defendant Crawford's Memorandum of Law further asserts that the plaintiff's Complaint alleges various theories of negligence couched as "inmate neglect resulting in physical injury," "failure to maintain a safe and secure environment for inmates," and "failure to provide a clean living environment for medical patients."  (ECF No. 10 at 15). Crawford argues that these claims are entirely conclusory and lack any substantive support from which a plausible negligence claim can be inferred.  (*Id.*)  Accordingly, Crawford asserts that such claims should be dismissed for failure to state a claim in accordance with *Iqbal*.  (*Id.*)

Alternatively, Crawford asserts that the plaintiff's negligence claims are barred by the doctrine of qualified immunity.  (*Id.*)  Qualified immunity "shields government officials from liability for civil damages provided their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person."  *Meyers v. Baltimore Cty.*, 713 F.3d 723, 731 (4th Cir. 2013).  To determine whether a state official is entitled to qualified immunity, the court "must first identify the

16

nature of the governmental acts or omissions which give rise to the suit for purposes of determining whether such acts or omissions constitute legislative, judicial, executive or administrative policy-making acts or otherwise involve discretionary governmental functions." *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 766 S.E.2d 751, 756 (W. Va. 2014). "To the extent that the cause of action arises from judicial, legislative, executive or administrative policy-making acts or omissions, both the State and the official involved are absolutely immune." *Id.*

In order to establish negligence, the plaintiff must show (1) that he was owed a duty of care; (2) the duty was breached; (3) the breach was the cause of an injury; and (4) he suffered damages. *See Browning v. Halle*, 632 S.E.2d 29, 32 (W. Va. 2005). The court must determine whether an "ordinary man in the defendant's position, knowing what he knew or should have known, [would] anticipate that harm of the general nature of that suffered was likely to result." *See Carroll v. West Virginia Reg'l Jail and Corr. Facility Auth.*, Civ. Act. No. 3:14-17012, 2015 WL 1395886, at 4 (S.D. W. Va. Mar. 25, 2015) (citing *Sewell v. Gregory*, 37 S.E.2d 82, 83 (W. Va. 1988)).

In *Carroll*, which also involved an inmate on inmate attack at the WRJ, the presiding District Judge found that, because the plaintiff was taken into custody under the authority of the Administrator of the jail, the Administrator owed a duty to the plaintiff to protect him from reasonable harm. *Id.* The Court then found that, despite scant factual allegations about the conduct of the defendant officer, further factual development was appropriate and necessary to determine whether the defendant was acting with discretion or merely following jail policies and procedures and, thus, whether qualified immunity was warranted. *Id.* at 4-5.

17

In addition to the allegations of "inmate neglect" and "failure to provide safe and secure housing for inmates" in the Complaint, which are cited by Crawford in his motion documents, the plaintiff's Response to the Motion to Dismiss contends that Crawford "neglected to protect and provide the necessary staff to continue to protect inmates" at the WRJ and "did not and has not provided us with the proper protection need by hiring the proper staff to work the doors and towers . . . ." (ECF No. 15 at 4).  To the extent that the plaintiff's allegations can be liberally construed to be alleging any separate claims of negligence arising out of the circumstances surrounding the plaintiff's assault, the undersigned proposes that the presiding District Judge **FIND**, similar to the ruling in *Carroll*, that such allegations are sufficient to raise plausible negligence claims under West Virginia law and that further factual development is necessary to determine whether defendant Crawford is entitled to qualified immunity on those claims.

## Claims against Crawford related to medical treatment

To the extent, however, that the plaintiff also seeks to hold Crawford liable for deliberate indifference to his serious medical needs, or for any negligence related to his medical treatment, it is well-settled that prison officials are entitled to rely upon the professional judgment of trained medical personnel. *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990); *Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995).  Thus, to establish a claim of deliberate indifference against non-medical prison personnel, a plaintiff must demonstrate that the official was personally involved in the treatment or denial of treatment, or that they deliberately interfered with the treatment, or that they tacitly authorized or were indifferent to the medical provider's misconduct. *Miltier*, 896 F.2d at 853.  The plaintiff has made no such allegations concerning Crawford in the Complaint.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the Complaint fails to state a plausible claim against Crawford on this basis.

### C. The PrimeCare Defendants' Motion to Dismiss and Supplemental Motion to Dismiss, or in the alternative, Motion for Summary Judgment.

PrimeCare has also moved to dismiss the plaintiff's Complaint on the basis that it fails to state a plausible claim of deliberate indifference to a serious medical need against any of the PrimeCare defendants and because the plaintiff has failed to comply with the pre-requisites of the Medical Professional Liability Act ("MPLA"), W. Va. Code §§ 55-7B-1 *et seq.* The Memorandum of Law further asserts that PrimeCare is not a "person" who may be sued under 42 U.S.C. § 1983, and that the individual PrimeCare Defendants are entitled to qualified immunity. In the alternative, the PrimeCare Defendants assert that they are entitled to judgment as a matter of law on the plaintiff's deliberate indifference claim based upon undisputed evidence in the plaintiff's medical records. The undersigned will address each argument in turn.

<u>*Claims of deliberate indifference to a serious medical need*</u>

"In order to state a cognizable claim for denial of medical care under the Eighth Amendment, an inmate must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness*." Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990); *see also Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (collecting cases). "Serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a

lay person would easily recognize the necessity for a doctor's attention.  *Gaudreault v. Munic. of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990).

> Deliberate indifference may be demonstrated by either actual intent or reckless disregard.  *See Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position.  *See id.*  Nevertheless, mere negligence or malpractice does not violate the Eighth Amendment.  *See Estelle*, 429 U.S. at 106.

*Miltier*, 896 F.2d at 851-852.

Because PrimeCare is the contracted medical provider for the WVRJCFA, a state agency, the deliberate indifference standard is applicable to the conduct of PrimeCare and its individual employees, who may be considered to be acting under color of state law. *West v. Atkins*, 487 U.S. 42 (1998).  Although PrimeCare has argued that it is not a "person" under section 1983 (ECF No. 13 at 9-10), the Fourth Circuit and other federal courts have held that "[a] private corporation is liable under § 1983 . . . when an official policy or custom causes the alleged deprivation of federal rights."  *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727 (4th Cir. 1999); *see also Motto v. Corr. Med. Servs.*, Case No. 5:06-cv-00163, 2007 WL 2897854, 2007 U.S. Dist. Lexis 72436 (S.D. W. Va., Sept. 27, 2007) (Johnston, J.) (unpublished); *Price v. Corr. Med. Servs.*, Case No. 2:08-cv-00259, 2008 WL 5377779 (S.D. W. Va,., Dec. 18, 2008) (Faber, J. (unpublished); *Howell v. Evans*, 922 F.2d 712, 723-34 (11th Cir. 1991); *Nelson v. Prison Health Services, Inc.*, 9991 F. Supp. 1452, 1465 (M.D. Fla. 1997).

However, as noted in PrimeCare's Memorandum of Law, the plaintiff has not pled any allegations concerning such a policy or custom with regard to the conduct of PrimeCare Medical, Inc.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Amended Complaint fails to state a plausible

deliberate indifference claim against PrimeCare Medical, Inc. and that the plaintiff's claims against it should be dismissed for failure to state a claim upon which relief can be granted.

Turning to the conduct of the unidentified individual PrimeCare defendants, the burden of demonstrating deliberate indifference to a serious medical need is very high.  It is well settled that:

> A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain.  *See Farmer*, 511 U.S. at 832-35; *Sosebee v. Murphy*, 797 F.2d 182-83 (4th Cir. 1986); *Loe v. Armistead*, 582 F.2d 1291, 1296-97 (4th Cir. 1978).

*Rush v. VanDevander*, 2008 WL 495651 (W.D. Va., Feb. 21, 2008); *Banks v. Green Rock Correctional Center Medical Dept.*, 2007 WL 2903673 (W.D. Va., Oct. 3, 2007).  For example, in *Sosebee*, the Fourth Circuit found that if prison guards were aware that a steak bone had pierced an inmate's esophagus, causing infection that resulted in the inmate's death, and the guards had intentionally abstained from seeking medical help, such conduct <u>might</u> establish deliberate indifference to a serious medical need.

In *Webster v. Jones*, 554 F.2d 1285 (4th Cir. 1977), the plaintiff, who had complained numerous times of eye problems and loss of vision, claimed that he was cursorily examined after his initial complaint, but never re-examined despite later complaints.  The doctor claimed that he examined Webster several times, but never diagnosed a medical problem with his eye.  *Id.* at 1286.  Subsequently, a specialist found that Webster's vision had deteriorated to 20/400 and that he suffered from a detached retina and iritis, and that his vision could not be restored.  *Id.*  The Fourth Circuit found that, even if the doctor had been negligent in failing to properly diagnose or treat Webster,

negligence is not sufficient to demonstrate deliberate indifference to a serious medical

need and, thus, Webster's allegations did not constitute a cognizable constitutional claim.

*See also, Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998).

Likewise, disagreements between a health care provider and the inmate over a

diagnosis and the proper course of treatment are not sufficient to support a deliberate

indifference claim, and questions of medical judgment are not subject to judicial review.

*Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319

(4th Cir. 1975). As noted by the Fourth Circuit, an inmate is not entitled to unqualified

access to health care and treatment may be limited to what is medically necessary and not

"that which may be considered merely desirable" to the inmate. *Bowring v. Godwin*, 551

F.2d 44, 47-48 (4th Cir. 1977).

PrimeCare's Memorandum of Law asserts that the plaintiff's Complaint neither

pleads nor meets the legal threshold for a viable deliberate indifference claim. (ECF No.

13 at 10-12). Their Memorandum of Law states:

> This case is about nothing more than a disagreement between
> plaintiff Ballenger and PrimeCare medical personnel over the type and
> extent of treatment he has received for the injury he sustained to his mouth
> and teeth. Failure to provide cosmetic dentistry is not a violation of
> Ballenger's constitutional rights.
>
> The medical records in this case reflect that Ballenger was brought to
> the medical unit on December 3, 2014, after an altercation with other
> inmates. He had two broken front teeth, a 2 cm laceration on his lower lip
> and facial swelling. Dr. Baldera was called and immediately came to the
> facility to examine the plaintiff and suture his lip. An X-Ray of his facial
> bones was obtained on December 4, and it showed no fractures. On
> December 5, he was seen by a dentist, Dr. Krak. He noted that one front
> tooth had been knocked out and the other was pushed up into his gums.
> Ballenger was advised that the tooth would eventually re-erupt, but it would
> be dead. On December 9, Ballenger was again seen by Dr. Krak, who
> extracted the remaining front tooth. Ballenger was housed in the medical
> unit from the date of the injury until December 16, so that he could be

observed and treated.   (*See* **Exhibit B**, attached hereto and made a part
hereof).

(ECF No. 13 at 11).   PrimeCare asserts that this evidence demonstrates that the plaintiff

received appropriate treatment and simply disagrees with the treatment plan, instead

demanding a bridge or implant to replace his two missing teeth.   PrimeCare further

asserts that these facts to not rise to the level of a constitutional violation.   *See Russell v.*

*Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975).   (*Id.* at 12).

> The plaintiff's Response asserts:
>
> Since my attack, I have been without dental care now for about a year and I
> have not had a dental checkup since the dentist pulled out my tooth that was
> tucked into my gum.   I was told that they don't do that here, meaning
> replacement of a tooth, but in the same breath I was told that if I wanted it
> done, then they could schedule me an outside appointment, but I would
> have to pay for it myself.

(ECF No. 16 at 3).   He further contends that, because this incident happened when he was

in the custody of the WRJ, the cost of repairing his injuries should be borne by the

defendants.   (*Id.*)   He further contends that "anytime that medical needs are denied due

to cost is considered malpractice."   (*Id.* at 3-4).

From the face of the Complaint, it is clear that the plaintiff was evaluated and

treated by the medical providers affiliated with PrimeCare, and the allegations are

insufficient to establish that PrimeCare or its employees were deliberately indifferent to

the plaintiff's serious medical needs.   On pages 4 and 8 of the Complaint, the plaintiff

acknowledges that he received stitches and sutures in his mouth and had one tooth

extracted by a dentist.   His Complaint further asserts that he was not provided with

diagnostic testing and that he wants further treatment concerning his teeth.   These

allegations, however, amount to no more than the plaintiff's disagreement with the

professional judgment and course of treatment selected by the healthcare professionals

and do not rise to the level of a plausible constitutional violation.  At most, the allegations in the plaintiff's Complaint might support a claim of negligence, which is not actionable under the federal constitution and section 1983.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has failed to establish that PrimeCare or any of its individual employees were deliberately indifferent to any of the plaintiff's serious medical needs.  Because the plaintiff has not established a violation of his constitutional rights, the individual defendants are also entitled to qualified immunity.  *See Wilson v. Layne*, 526 U.S. 603, 609 (1999) (Government officials are not liable for monetary damages if they can show that their conduct did not violate clearly-established statutory or constitutional rights of which a reasonable person would have known); *Saucier v. Katz*, 533 U.S. 194 (2001) (If the allegations do not give rise to a constitutional violation, a defendant is entitled to qualified immunity and no further inquiry is necessary).

Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a plausible claim under section 1983 upon which relief can be granted against the PrimeCare defendants.

### *Negligence/medical malpractice claims*

PrimeCare's motion documents also assert that, to the extent that the plaintiff's Complaint is alleging that conduct of the PrimeCare defendants constitutes negligence or medical malpractice, which does not rise to the level of a constitutional violation, it is undisputed that the plaintiff has failed to satisfy the pre-requisites of the West Virginia Medical Professional Liability Act ("MPLA"), specifically, W. Va. Code § 55-7B-6(b), which requires a person bringing a medical malpractice action to serve a notice of claim and a screening certificate of merit from a qualified expert health care provider indicating

that a defendant's conduct violated the applicable standard of care, which resulted in injury to the plaintiff, and this notice and certificate must be served on the proposed defendants at least 30 days prior to filing suit.  *See Boggs v. Camden-Clark Memorial Hosp. Corp.*, 609 S.E.2d 917 (W. Va. 2004); *Davis v. Mound View Health Care, Inc.*, 640 S.E.2d 91 (W. Va. 2006).   (ECF No. 34 at 6-7).   The PrimeCare Defendants' initial Memorandum of Law further asserts:

> By his failure to comply with the provisions of W. Va. Code § 55-7B-6, the plaintiff has failed to demonstrate through the mandatory screening procedure that his claim[s] against these Defendants have been appropriately screened by an expert and certified as being worthy of pursuit in litigation.  The purpose of requiring the notice of claim and screening certificate of merit prior to the filing of a medical malpractice claim is twofold: "(1) to prevent the making and filing of frivolous medical malpractice claims and lawsuits; and (2) to promote the pre-suit resolution of non-frivolous medical malpractice claims."  *Hinchman v. Gillette*, 618 S.E.2d 387, 394 (W. Va. 2005).

(ECF No. 13 at 7-8).   PrimeCare's Memorandum further assert that this requirement applies to cases filed in federal court.  *See Stanley v. United States*, 321 F. Supp.2d 805, 807 (N.D. W. Va. 2004); ); *see also Gaylor v. Dagher*, Case No. 2:10-cv-00258, 2011 WL 482834, 2011 U.S. Dist. LEXIS 12400 (S.D. W. Va., Jan. 14, 2011) (unpublished); *Motto v. Correctional Medical Services,* Case No. 5:06-cv-00163, 2007 WL 2897854, 2007 U.S. Dist. LEXIS 72436 (S.D. W. Va. Sept. 27, 2007) (unpublished decision).  (*Id.* at 8).

The MPLA defines "health care" to mean "any act or treatment performed or furnished or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement."  *See* W. Va. Code § 55-7B-2(e).  The MPLA defines "medical injury" as meaning "injury or death to a patient arising out of or resulting from the rendering of or failure to render health care."  *See* W. Va. Code § 55-7B-2(h).  The MPLA defines "health

care provider" to include a person, . . . [or] corporation, . . . licensed or certified in this state or another state, to provide health care or professional health care services, including, but not limited to, a physician, osteopathic physician, registered or licensed practical nurse, . . . or any officer, employee or agent thereof acting in the course and scope of such officer's, employee's or agent's employment." *See* W. Va. Code § 55-7B-2(g).   The MPLA governs "any liability for damages resulting from . . . injury of a person for any tort . . . based on health care services rendered or which should have been rendered, by a health care provider or health care facility to a patient." *See* W. Va. Code § 55-7B-2(i).

Accordingly, to the extent that the plaintiff's Complaint contains allegations that would support a negligence or medical malpractice claim, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has not complied with the MPLA requirements, and dismissal of any such claim is required.

*Failure to exhaust administrative remedies*

PrimeCare further asserts that the plaintiff's Complaint must be dismissed because the plaintiff has failed to exhaust the available administrative remedies concerning his claims therein.   However, because there are other valid grounds for dismissal of the PrimeCare defendants herein, the undersigned finds it unnecessary to address the exhaustion defense raised in PrimeCare's motion.   Additionally, because there is no reason to look beyond the allegations in the Complaint to resolve PrimeCare's liability, the undersigned finds it unnecessary to reach PrimeCare's alternative summary judgment motion.

## RECOMMENDATIONS

Based upon the proposed findings contained herein, it is respectfully **RECOMMENDED** that the Motion to Dismiss filed by defendant Crawford (ECF No. 9)

26

be **GRANTED** as to any and all claims brought against defendant Crawford in his official capacity, and as to the plaintiff's deliberate indifference claims, if the same are determined to have been brought against Crawford in his individual capacity, but **DENIED** with regard to the potential negligence claims addressed in the Complaint.

It is further respectfully **RECOMMENDED** that the Motion to Dismiss filed by PrimeCare (ECF No. 12-1) be **GRANTED**, that PrimeCare's alternative Motion for Summary Judgment (ECF No. 12-2) be **DENIED AS MOOT**, and that PrimeCare and its unidentified (John Doe) employees named in the Complaint be dismissed as defendants herein.

It is further respectfully **RECOMMENDED** that the presiding District Judge leave this matter referred to the undersigned United States Magistrate Judge for additional proceedings concerning the negligence claims against defendant Crawford and all claims against the John Doe correctional officers named in the Complaint.

The plaintiff is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, Chief United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to the opposing parties and Chief Judge Chambers.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

<u>August 5, 2016</u>

Dwane L. Tinsley
United States Magistrate Judge